Lord and others agt. Vandenburgh and others.

## SUPERIOR COURT.

### LORD and others agt. VANDENBURGH and others.

Where an attorney resides in one town or city and has his office for the transaction of business in another, how shall persons in the latter place serve papers upon him *if his office be closed?* They are not bound to follow him to his residence and make manual delivery there. If bound to serve papers at his residence at all, in such case, service by mail is sufficient.

In such case, if, in compliance with the 5th of the rules of court, the attorney adds the *place* of his office to his name, he is concluded thereby. Such *place* will be deemed his residence for the purpose of such service, so that persons desiring to make service will not be bound to go or send to another town, his actual residence.

And where the paper to be served is an *answer* in a cause in which the summons (in obedience to § 128 of the Code) specifies the place where the answer was required to be served on the plaintiff's attorney, the defendant is not bound to serve his answer in any other place. And if the attorney's office is closed and he does not reside in that place, an endeavor to serve at the office, within the time allowed to answer, followed by an actual service within a reasonable time afterwards when the office is open, will be regarded as a sufficient service.

A party is not bound to make an impracticable service.

Where a plaintiff's attorney issued a summons requiring the answer to be served on him at the city of New-York, and added to his subscription, "195 Broadway," that being his office; and on the *last day* for answering, the defendant's attorney, at about 4 o'clock P. M., sent the answer to his office, and found it closed, the plaintiff's attorney having left the city for his residence at Flushing; and again, the next day the defendant's attorney sent the answer to his office, and the plaintiff's attorney refused to receive it, having in fact entered up judgment and issued execution that morning. *Held,* that the defendant's attorney was regular, the judgment &c., irregular, and the judgment and execution were set aside, with costs.

*General Term.*

*Before* BOSWORTH, HOFFMAN, WOODRUFF *and* PIERREPONT, *Justices.*

*Argued March 13th,* 1858.    *Decided March 20th,* 1858.

THE summons in this action in terms, required the defendants to serve their answer upon the plaintiffs' attorney at the city of New-York, within twenty days, and was subscribed by the plaintiffs' attorney, with the addition to his name, of the words and figures, " 195 Broadway." The residence of the plaintiffs' attorney is at Flushing, in Queens county, but his office is at No. 195 Broadway, in the city of New-York.

The time to answer expired on the 27th day of January last; and at about 4 o'clock in the afternoon of that day a copy of the answer of the defendants and an affidavit of merits were taken to the office of the plaintiffs' attorney for the purpose of being served. The person employed to make the service, found the office closed, and no person there upon whom to make the service, and could not obtain access to the office so as to leave the papers in a conspicuous place therein. In fact, the plaintiffs' attorney had before 4 o'clock left the city for his residence at Flushing, and the person left by him in charge, had closed the office and gone home before the person arrived with the papers.

On the next day, the defendants' answer and the affidavit of merits were again taken to the office of the plaintiffs' attorney and offered to him, but he refused to receive them. He had already at 9½ o'clock that morning, entered up judgment against the defendants, as upon failure to answer.

The defendants' attorney thereupon moved to set aside the judgment for irregularity, and also for leave to serve the answer, &c., and for other relief, &c., upon the merits. The motion was opposed not only upon the ground that the judgment was regular, but also on the ground that the action was upon two promissory notes, as to one of which the only defence set up in the answer was usury; and that affidavits submitted by the plaintiffs, tended to show that the whole defence was interposed in bad faith, and for the purposes of delay, and that the

Lord and others agt. Vandenburgh and others.

defendants are insolvent and have threatened to dispose of their property so as to give preference to other creditors and defraud the plaintiffs. And the plaintiffs therefore insisted that the defendants ought not to be relieved upon the merits, nor upon any terms. Upon the hearing of the motion at special term, the defendants were permitted to answer upon striking out the defence of usury; so as to defend as to one note only, but upon these terms, to wit: that the sheriff proceed to collect upon the execution the amount of the note thus remaining undefended; that the judgment, execution and levy, stand as security for the amount of the other note; and that the sheriff retain, under his levy, an amount of property amply sufficient to pay such last-named note with interest and costs, including costs of the further litigation.

The motion so far as it proceeded upon the ground that the plaintiffs' proceeding was irregular, was denied; the defendants were required to accept short notice of trial, and the costs of motion, $10, were directed to abide the result of the further litigation, but if these terms were not accepted, the motion was wholly denied with ten dollars costs. From this order the defendants appealed.

JOHN FITCH & WM. C. NOYES, *for the defendants, appellants.*
E. F. TREADWELL, *for the plaintiffs, respondents.*

By the court—WOODRUFF, Justice. In *Jacobs* agt. *Marshall,* decided at the general term, December 26th, 1857, it was decided by us that where the plaintiff was strictly regular, in entering up his judgment on failure to answer, and the default was subsequently opened upon terms, those terms rested in the discretion of the court in such sense that whatever we may think of the propriety of discriminating between the defence of usury and any other, we are not at liberty to review the exercise of that discretion. (2 *Code Rep.* 41; 3 *id.* 141; 1 *Comstock,* 43, *and cases cited;* 4 *Sandford Sup. Ct. Rep.* 709.)

This renders it unnecessary to discuss many of the topics urged upon our attention on the argument of the appeal. Were

the plaintiffs regular in entering judgment as upon a failure to answer ? Section 417 of the Code, requires that where a party shall have an attorney in the action, the service of papers *shall* be made upon *him*, and not upon the party himself. Section 409 provides in respect to service on an attorney, that if he be absent from his office, and there is no clerk therein, and no person there having charge thereof, service may be made by leaving the paper between the hours of six in the morning and nine in the evening in a conspicuous place in the office, or if it be not open so as to admit of such service, then by leaving the paper at the attorney's *residence*, with some person of suitable age and discretion.

And section 410 provides that service by mail may be made where the person making the service and the person on whom it is to be made, reside in different places, between which there is a regular communication by mail. The 5th of the rules of court, provides that on process or papers to be served, the attorney besides subscribing or indorsing his name, shall add thereto his place of residence, and if he shall neglect so to do, papers may be served on him through the mail, by directing them according to the best information which can conveniently be obtained concerning his residence.

Under these several provisions, it may often be material to inquire how service shall be made upon attorneys who reside in one place, and have an office for the transaction of business in another ? It is at least doubtful whether such a case is contemplated by these provisions, and in terms provided for.

Section 409, providing for a service at the residence of the attorney, by leaving with some person of suitable age and discretion, contemplates a service at a residence within the same town ; so far at least as it can be held to *require* an actual delivery at such residence. Though a service at the actual residence might be sufficient, the party serving the paper cannot be compelled to go out of town to seek it. We are, therefore, clearly of opinion that the defendants were not *bound* to go or send to Flushing, to make manual delivery of the answer in this case, at the residence of the plaintiffs' attorney.

Any other view of this section would be palpably unreason-able, for if *bound* to go to Flushing to make service, the same rule would require a party to go to any part of the state, how-ever remote. Were the defendants *bound* to serve the answer by mail? 'It was not insisted upon the argument of the ap-peal that they were so bound, or that such a service would in this case have been proper. Indeed, it does not appear by the papers whether there is or is not any regular communication by mail between New-York and Flushing. Probably such communication exists, and the omission so to state arises from the fact that the plaintiffs' counsel did not deem it material to claim that service by mail could or should have been made in this case. We desire to say on this point, that we are *not* pre-pared to say that where the attorney resides in one town and has his office in another, service of notices and orders and pa-pers generally, may not regularly be made by mail, if service at his office be impracticable. And where the attorney has designated his *residence* on the process issued by himself, he may doubtless *require* that service of such papers, if not in fact duly made at his office, be made by mail addressed to him at such residence.

And where an attorney so situated, issues process or papers to be served, without adding any place to his name as his resi-dence, then it is the most reasonable construction of the above sections and the rule of court, to say, that if his office be closèd, the party desiring to serve papers, may either follow him out of town to his residence, or may serve the papers on him by mail, by directing them according to the best information which can conveniently be obtained concerning his residence; and that one or the other of these modes must be adopted; unless on inquiry with reasonable diligence, no information concerning such residence can be had.

So that in the present case, if the plaintiff's attorney had not added 195 Broadway to his name, the question, if it were not affected by the provisions of section 128, to be presently no-ticed, would be, had the defendants information, or could they have " conveniently " obtained information, concerning his

residence ? But where an attorney residing out of the city, keeps his office here, desires to secure the service of papers at his office, and in apparent compliance with rule 5th, adds the place to his name, a very different case is presented.

In *Rowell* agt. *McCormick*, (5 *Howard*, 337,) it was held by WELLES, Justice, that " an attorney has the right himself to decide where he resides, for the purposes of the rule, and that where he has so decided by a proper subscription, the adverse party is bound to conform thereto." If this proposition be followed out to its full extent, then service on the plaintiffs' attorney by mail, addressed to him at Flushing, would have been irregular and fruitless. It is not necessary that we should now so hold ; but we do hold, that having subscribed his name and added a place, in compliance with the rule, the plaintiffs' attorney is himself concluded by his own designation. He cannot require that a party desiring to make service, should go or send out of town to make service on him, at any other place than that designated. As to him, it is as though the words " New-York," had been added to his name. And we apprehend, that had those words been used, it would hardly be claimed that the defendant was bound to serve papers in Flushing in any mode. If the terms " 195 Broadway," were otherwise equivocal, they are made precise by the form of the summons itself, which in terms requires that the answer be served on the plaintiffs' attorney " at the city of New-York."

The subject has thus far been considered, as it was discussed on the argument, viz : as if the service of an *answer* in the cause was governed by no rules other than such as relate to notices, orders, and other papers. And thus considered, we conclude that the plaintiffs' attorney was bound by his own designation, and that the defendants' attorney was not bound to go or send out of the city of New-York. But in relation to an answer, the case is even stronger against the plaintiffs. Section 128 of the Code, provides that the summons shall specify *a place* within *this state*, and require the answer to be *there served*. And whatever be true in respect to other papers in the progress of a cause, it is by no means clear that a de-

Lord and others agt. Vandenburgh and others.

fendant can in any case be required to serve an answer either by mail or otherwise, at any place other than the place so designated in the summons. On the contrary, we incline to the opinion, that an answer served according to the express require-- ment of the summons, must be held regular, and that a plaintiff cannot require the defendant to look elsewhere for either the office or residence of the attorney.

It was, we think, the design of the legislature in prescribing this requisite of the summons, to furnish the defendant certain and reliable information of the *place*, the city, town or village, where service might be made, and that a defendant should not be put to inquiries respecting the place of service. Our conclusion is, that the defendants were not bound to serve an answer on the plaintiffs' attorney out of the city of New-York; that for the purpose of serving the answer, the city of New-York is to be taken, as against the plaintiffs, as the place for such service; and that the defendants had a right to treat the place designated, "195 Broadway," as the residence of the plaintiffs' attorney, for all the purposes of such a service— he having, in fact, no other residence in the city. How it would be if he had an actual residence in the city, 195 Broadway being his office only, it is unnecessary to consider.

New-York and 195 Broadway in New-York, being then a place which the defendants had a right to treat as the sole place for the service of the answer, it only remains to observe that they did all that it was possible to do to effect a service of the answer within the twenty days allowed therefor. Within reasonable hours on that day, they took the answer there. They could neither find a person there to receive it, nor obtain access thereto, in order to place it within the place designated. At an hour the next day, which was reasonable, they again presented it and it was refused. They were not bound to make an impracticable service. The service should, we think, be deemed good and sufficient. The views we have thus expressed, we think, find some support in *Watkins* agt. *Stevens*, (3 *How.* 28;) *Rowell* agt. *McCormick*, (5 *How.* 337;) *Falconer* agt. *Ucoppell*, (2 *Code R.* 71.)

VOL. XV.                    24

Some statements in the affidavits, read in opposition to the motion, tend to show that the papers attempted to be served on the 27th of January, were not perfect copies, or fully completed; but we think the statements on that subject, in connection with the moving papers, are too indefinite and unsatisfactory to affect the result. We have not been insensible to the considerations which influenced the judge at special term, in retaining the judgment as security for what may ultimately be recovered.

The case made by the plaintiffs' affidavits, warrants a very serious apprehension that before a trial on the merits and judgment thereon, the property of the defendants may be so appropriated as to render the collection of the debt, (if a debt be established,) very doubtful. It is true that the defendants have not had an opportunity to contradict what is stated in those affidavits, but still the case made by the plaintiffs is such that if we had any discretion in the matter, we should be inclined to allow the judgment, execution and levy, to still stand as security. But we have no discretion. Having come to the conclusion that the judgment was irregularly entered, we are not at liberty to regard such considerations as are suggested by the plaintiffs' affidavits. It is our duty to set the judgment aside, and leave the plaintiffs to resort to other remedies by injunction or attachment, if they are advised that the evidence of an intent to defraud them, is such as to call for summary interference by those provisional remedies. The order appealed from must be modified. The judgment, execution and levy, must be set aside, and the plaintiffs be required to accept the answer, and pay the costs of the motion, at special term, fixed at ten dollars.

The costs of the appeal, (ten dollars,) may abide the event of the suit.

Ordered accordingly.